UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___9/26/16___

METROPOLITAN LIFE INSURANCE
COMPANY,

      Plaintiff,

  - against -

SICOLI AND MASSARO INC. PENSION
TRUST, SICOLI AND MASSARO INC.
PENSION TRUST PLAN, SICOLI AND
MASSARO INC., AS PLAN
ADMINISTRATOR FOR THE SICOLI
AND MASSARO INC. PENSION TRUST
PLAN, and DOMINIC P. MASSARO, AS
TRUSTEE OF THE SICOLI AND
MASSARO INC. PENSION TRUST AND
PLAN ADMINISTRATOR OF THE SICOLI
AND MASSARO INC. PENSION TRUST
PLAN,

      Defendants.

15 Civ. 7141 (PGG)

**MEMORANDUM
OPINION & ORDER**

PAUL G. GARDEPHE, U.S.D.J.:

    Plaintiff Metropolitan Life Insurance Company ("MetLife") brings this action

pursuant to Section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"),

29 U.S.C. § 1132, against Defendants Sicoli and Massaro Inc. Pension Trust (the "Trust"); Sicoli

and Massaro Inc. Pension Trust Plan ("the Plan"); Sicoli and Massaro, Inc., as plan administrator

for the Plan; and Dominic P. Massaro, as trustee of the Trust and administrator for the Plan.

MetLife claims that Defendants breached their fiduciary duty to MetLife by refusing to return an

overpayment that MetLife erroneously made to Defendants in connection with a life insurance

policy. (Cmplt. (Dkt. No. 1)) Defendants have moved to dismiss the Complaint or, in the

alternative, to transfer this action to the Western District of New York. (Dkt. No. 27)

For the reasons stated below, Defendants' motion to dismiss will be granted, and Defendants' motion to transfer will be denied as moot.

## BACKGROUND

### I.   FACTS[1]

On May 1, 1973, Sicoli and Massaro, Inc. established the Sicoli and Massaro Inc. Pension Trust for the benefit of its employees. (Cmplt. (Dkt. No. 1) ¶¶ 2, 12) The Trust, in turn, established the Sicoli and Massaro Inc. Pension Trust Plan, a pension plan organized under ERISA, 29 U.S.C. § 1001 et seq. (Id. ¶¶ 3, 13) Sicoli and Massaro, Inc. is the administrator for the Plan. (Id. ¶ 4) Dominic P. Massaro is both a principal of Sicoli and Massaro, Inc., and a trustee of the Trust. (Id. ¶ 5)

On June 1, 1999, the Trust – on behalf of the Plan – purchased a life insurance policy (the "Policy") from New England Life Insurance Company[2] insuring the life of Dominick C. Massaro, an employee of Sicoli and Massaro, Inc. (Id. ¶ 16) Claims under the Policy are administered by MetLife. (Id. ¶ 19) The Policy has a face amount of $690,500. (Id. ¶¶ 20-21) Dominick C. Massaro designated the Trust as the beneficiary of the Policy. (Id. ¶ 29) The Policy obligates MetLife to pay the Trust the face amount of the Policy –$690,500 – upon Dominick C. Massaro's death. (Id. ¶¶ 23-25, 28)

Dominick C. Massaro died on June 4, 2012 (id. ¶ 27), and the Trust submitted a claim to MetLife under the Policy at that time. (Id. ¶ 30)

---

[1]  The following facts are drawn from the Complaint and are presumed true for purposes of resolving Defendants' motion to dismiss. See Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).

[2]  New England Life Insurance Company is a MetLife affiliate. (Id. ¶ 16)

2

On June 18, 2012, MetLife erroneously paid the Trust $1,174,060.36 –

$481,237.21 more than the correct amount due to the Trust under the Policy.[3] (Id. ¶¶ 31-32)

The overpayment was the result of MetLife having inadvertently included benefits under an

inapplicable rider, as well as corresponding interest. (Id. ¶ 33)

On August 23, 2012, MetLife wrote to Dominic P. Massaro – as trustee of the

Trust (id. ¶ 5) – and asked him to return the $481,237.21 overpayment. (Id. ¶ 35) On September

20, 2012, the Trust informed MetLife that it would not return the money unless MetLife provided

documentation demonstrating that the $481,237.21 was, in fact, an erroneous overpayment. (Id.

¶ 36) MetLife thereafter sent additional letters and documentation to Dominic P. Massaro

demonstrating that the $481,237.21 was an overpayment. (Id. ¶ 37) Defendants have refused to

return the alleged overpayment, however. (Id. ¶ 38)

---

[3] Under the Policy, the Trust was entitled to $692,823.15. This amount is comprised of the $690,500 face amount, a $1,261.82 cost of insurance refund, and interest of $1,061.33. (Id. ¶ 34)

3

## **DISCUSSION**

## I.   **RULE 12(b)(6) STANDARD[4]**

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal,

556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In

considering a motion to dismiss . . . the court is to accept as true all facts alleged in the

complaint," Kassner, 496 F.3d at 237 (citing Dougherty v. Town of N. Hempstead Bd. of Zoning

---

[4] Although Defendants contend that this Court lacks subject matter jurisdiction (see Def. Br. (Dkt. No. 33) at 2), that contention is premised entirely on Defendants' argument that the Complaint does not state a claim under ERISA. See id. ("because Defendants did not owe MetLife a fiduciary duty, MetLife's ERISA claim for breach of fiduciary duty is untenable. Without MetLife's breach of fiduciary duty claim, there is no federal question for this Court to adjudicate; therefore, this Court has no subject matter jurisdiction over this matter."); see also id. at 4 ("This Court lacks subject matter jurisdiction because [Defendants] did not owe MetLife a fiduciary duty, and thus could not have breached a fiduciary duty to MetLife."))

"'[Where] a federal statute upon which a claim is premised is interpreted to be inapplicable, it could be argued that the plaintiff has failed to present a federal question and thus subject matter jurisdiction is absent.'" Vacca v. Trinitas Hosp., No. 05-CV-0368 JFB AKT, 2006 WL 3314637, at *2 n.2 (E.D.N.Y. Nov. 14, 2006) (quoting Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1188-89 (2d Cir. 1996). "'[C]ourts have uniformly held[, however,] that in such situations the preferable practice is to assume that jurisdiction exists and proceed to determine the merits of the claim pursuant to [Rule 12(b)(6)].'" Vacca, 2006 WL 3314637, at *2 n.2 (quoting Nowak, 81 F.3d at 1189); see Da Silva v. Kinsho Int'l Corp., 210 F. Supp. 2d 241, 248 (S.D.N.Y.), aff'd, 229 F.3d 358 (2d Cir. 2000) (where "the inquiry . . . necessary to assess [subject matter jurisdiction over] [p]laintiff's . . . claim [is] . . . bound up in the merits of the claim," the motion to dismiss should be decided "under Fed. R. Civ. P. 12(b)(6) for failure to state a claim [rather] than under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction"); see also Via Christi Reg'l Med. Ctr., Inc. v. Blue Cross & Blue Shield of Kansas, Inc., 361 F. Supp. 2d 1280, 1285 (D. Kan. 2005) (where "[a] determination of whether [defendants] are fiduciaries within the meaning of ERISA . . . would effectively be a ruling on the merits[,] . . . [t]he Court will use the standards under Rule 12(b)(6) to analyze [the] motion.").

Here, because Defendants' argument as to subject matter jurisdiction is "bound up in the merits of the claim," any "dismissal should be under 12(b)(6) for failure to state a claim, rather than under 12(b)(1)." Nowak, 81 F.3d at 1191. Accordingly, Defendants' motion will be construed as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco, 622 F.3d at 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)). Additionally, "[w]here a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).

## II.    ANALYSIS

Defendants argue that MetLife has not stated a claim for breach of fiduciary duty under ERISA, because "Defendants did not owe MetLife a fiduciary duty." (Def. Br. (Dkt. No. 33) at 2).[5] Defendants further contend that MetLife cannot obtain equitable relief pursuant to ERISA § 502(a)(3), because MetLife's underlying ERISA claim for breach of fiduciary duty fails. (Id. at 10)

### A.    Breach of Fiduciary Duty under ERISA

All of MetLife's claims in this action are explicitly premised on Defendants' alleged breach of fiduciary duty under ERISA.[6] (See Cmplt. (Dkt. No. 1) at 5-6 ("First Cause of

---

[5] All page citations are as reflected on this District's Electronic Case Filing system.
[6] Plaintiff's "Fourth Cause of Action" is a "Claim for Attorney's Fees Against All Defendants." (See Cmplt. (Dkt. No. 1) ¶¶ 78-79). A request for an award of attorney's fees seeks a remedy; it does not plead a cause of action. See Hutson v. Notorious B.I.G., LLC, No. 14-CV-2307 (RJS), 2015 WL 9450623, at *8 (S.D.N.Y. Dec. 22, 2015) (requests for "attorneys' fees . . . are remedies, not causes of action") (citing Mercer v. Mercer, No. 13-cv-4192 (SJF) (WDW), 2014 WL 3652698, at *7 (E.D.N.Y. July 21, 2014)).

Action" for "Breach of Fiduciary Duty, Unjust Enrichment and Surcharge" brought under "ERISA § 502(a)(3)"); id. at 8 ("Second Cause of Action" for "Breach of Fiduciary Duty and Equitable Restitution" brought under "ERISA § 502(a)(3)"); id. at 8-9 ("Third Cause of Action" for "Breach of Fiduciary Duty and Constructive Trust" brought under "ERISA § 502(a)(3)") Indeed, the Complaint's sole theory of recovery is that "the Defendants breached their fiduciary duties to MetLife . . . and to the [T]rust [under ERISA] by improperly retaining . . . the erroneous overpayment of death benefits in the amount of $481,237.21." (Id. ¶ 53; see id. ¶¶ 62, 71)

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefits plans." Bendik v. Credit Suisse First Boston (USA), Inc., No. 02 CIV. 9554 (CBM), 2004 WL 736852, at *7 (S.D.N.Y. Apr. 5, 2004) (citing Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90 (1983)). "'ERISA's central purpose is to protect beneficiaries of employee benefits plans.'" Trustees of Upstate New York Engineers Pension Fund v. Ivy Asset Mgmt., 131 F. Supp. 3d 103, 121 (S.D.N.Y. 2015) (quoting Gedek v. Perez, 66 F.Supp.3d 368, 373 (W.D.N.Y. 2014) (internal quotation marks and citation omitted)); see John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank, 510 U.S. 86, 114 (1993) ("ERISA's focus [is] on protecting plan participants and their beneficiaries" (citations omitted)).

Under Section 409 of ERISA,

> [a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries . . . shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a).

6

"To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege facts which, if true, would show that the defendant acted as a fiduciary, breached its fiduciary duty, and thereby caused a loss to the plan at issue." Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 730 (2d Cir. 2013) (citing 29 U.S.C. § 1109(a); Pegram v. Herdrich, 530 U.S. 211, 225-26 (2000)). "As [the Second Circuit] has observed, 'a person may be an ERISA fiduciary with respect to certain matters but not others, for he has that status only to the extent that he has or exercises the described authority or responsibility.'" Trustees of Upstate New York Engineers Pension Fund v. Ivy Asset Mgmt., 131 F. Supp.3d 103, 127 (S.D.N.Y. 2015) (quoting Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co., 302 F.3d 18, 28 (2d Cir. 2002) (internal quotation marks and citation omitted)). Thus, "'[i]n every case charging breach of ERISA fiduciary duty . . . the threshold question is . . . whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.'" Coulter v. Morgan Stanley & Co. Inc., 753 F.3d 361, 366 (2d Cir. 2014) (quoting Pegram, 530 U.S. at 226); see F.W. Webb Co. v. State St. Bank & Trust Co., No. 09 CIV. 1241 RJH, 2010 WL 3219284, at *4 (S.D.N.Y. Aug. 12, 2010) ("The threshold issue in this case, like in any ERISA case, is whether and to what extent defendants were fiduciaries. . . . Unless defendants' [challenged actions] fell within the scope of fiduciary responsibilities[,] . . . plaintiffs have no claim [for breach of fiduciary duty] under ERISA." (citing Harris Trust and Savings Bank, 302 F.3d 18, 28 (2d Cir. 2002); Pegram, 530 U.S. at 226)).

Here, Defendants argue that "MetLife cannot sue [Defendants] for breach of fiduciary duty, as [Defendants] did not owe MetLife a fiduciary duty." (Def. Br. (Dkt. No. 33) at 5) MetLife contends, however, that Defendants owed fiduciary duties to MetLife because

MetLife and Defendants are "co-fiduciaries of the Plan." (Pltf. Br. (Dkt. No. 31) at 17; see
Cmplt. (Dkt. No. 1) ¶ 53 ("as fiduciaries under ERISA, the Defendants breached their fiduciary
duties to MetLife, as co-fiduciary")) Case law indicates that while both MetLife and Defendants
owe a fiduciary duty to Plan participants, Defendants do not owe a fiduciary duty to MetLife
under ERISA.

In Sharp Elecs. Corp. v. Metro. Life Ins. Co., 578 F.3d 505 (7th Cir. 2009), for
example, a participant in Sharp Electronics Corp.'s group disability ERISA plan sued MetLife –
which had underwritten the plan – alleging that MetLife had wrongfully denied her benefits.
Sharp Electronics Corp., 578 F.3d at 507. After MetLife informed the plan participant that "one
reason it had refused to pay her any long-term [disability] benefits was that Sharp had failed to
make required [premium] payments . . . on her behalf," the plan participant added Sharp – the
plan administrator – as a defendant in that action. (Id. at 507-08) Sharp then filed a cross-claim
against MetLife, alleging that MetLife had breached its fiduciary duty to Sharp by informing the
plan participant that Sharp's non-payment of the premium had influenced MetLife's decision to
deny disability benefits. (Id. at 507, 509) Sharp sought to recover from MetLife, inter alia, the
cost of defending itself against the claim brought by the plan participant. (Id. at 511) The
Seventh Circuit affirmed the dismissal of Sharp's cross-claim for breach of fiduciary duty
against MetLife, finding that MetLife did not owe a fiduciary duty to Sharp:

> We can assume that MetLife was a fiduciary with respect to the Plan, and we can
> also assume that Sharp was a fiduciary with respect to the Plan. But this does not
> mean that either one was a fiduciary with respect to the other. Their relationship
> was purely contractual: MetLife agreed to perform certain services for Sharp,
> with respect to this benefits plan. See 29 U.S.C. § 1002(21)(A) (defining
> circumstances in which "a person is a fiduciary with respect to a plan" without
> any mention of fiduciary relationships arising between parties who contract for
> plan-related services); cf. Johnson v. Georgia–Pacific Corp., 19 F.3d 1184, 1188
> (7th Cir. 1994) ("This definition [in 29 U.S.C. § 1002(21)(A) ] does not make a
> person who is a fiduciary for one purpose a fiduciary for every purpose. A person

8

is a fiduciary to the extent that he performs one of the described duties; people may be fiduciaries when they do certain things but be entitled to act in their own interests when they do others."). Put a little differently, Sharp is not the kind of entity that Congress had in mind for the protections it created in ERISA. Sharp's argument based on a direct fiduciary duty therefore must be rejected.

Id. at 512.[7]

Similarly, in First Nat. Life Ins. Co. v. Sunshine-Jr. Food Stores, Inc., 960 F.2d 1546 (11th Cir. 1992), the Eleventh Circuit concluded that "although [an employer] was a fiduciary with respect to [a] plan [organized under ERISA], it was not a fiduciary with respect to [the insurer it had retained to provide health benefits to its employees]." First Nat. Life Ins. Co., 960 F.2d at 1550. In that action, First National Life Insurance Company ("FNL") had issued a group life and health insurance policy for an employee welfare benefit plan established by employer Sunshine-Jr. Food Stores, Inc. ("Sunshine") under ERISA. Id. at 1548. After Sunshine terminated FNL and obtained coverage from another insurer, FNL brought suit against Sunshine under ERISA § 502. (Id.) FNL sought, inter alia, an order requiring Sunshine to render an accounting, so that FNL could "determine if Sunshine [had] complied with the insurance agreement. FNL contend[ed] that Sunshine stood in a fiduciary capacity as to FNL and is therefore obligated to render an accounting." (Id. at 1550)

---

[7] MetLife argues that Sharp Elecs. Corp. is distinguishable, because in that action "the losses the plaintiff sought to recover were not incurred by the plan and thus, could not be recovered in a claim for breach of fiduciary duty." (Pltf. Br. (Dkt. No. 31) at 19) The Complaint here does not plead that the Plan or Trust suffered any loss, however. To the contrary, the Complaint pleads that MetLife suffered a loss and that the Trust and Plan received an overpayment, and were thereby "unjustly enriched." (See Cmplt. (Dkt. No. 1) ¶ 54 (alleging that "[t]he $481,237.21 amount overpaid to the Trust belongs to MetLife, and the Trust has improperly retained these funds causing injury to MetLife"); id. ¶ 55 (alleging that the "Defendants have been unjustly enriched in the amount of $481,237.12, plus interest, as a result of their refusal to return the overpaid benefits"); id. ¶ 73 ("The Defendants, which are not entitled to keep the overpaid funds under the clear terms of the Policy, have been unjustly enriched as a result of MetLife's overpayment. . . .")).

9

"The district court concluded that although Sunshine was a fiduciary with respect

to the plan, it was not a fiduciary with respect to FNL" (id.), and the Eleventh Circuit agreed:

> Clearly, the fiduciary duties outlined in ERISA are designed to protect the plan
> and its beneficiaries rather than those who administer the plan. See e.g., 29
> U.S.C. § 1002(21)(A) (defining "fiduciary" with respect to a plan). See also §§
> 1104 and 1109. Appellant has not pointed to any ERISA provision that would
> impose a fiduciary duty upon Sunshine with respect to FNL. Cf. Massachusetts
> Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 139 (1985) (Under § 1109(a), the
> relevant fiduciary relationship is one with respect to the plan.). Nor was the
> relationship between FNL and Sunshine such that Sunshine could be held
> accountable as a fiduciary. FNL entered into the policy with Sunshine as part of
> an arm's-length transaction. FNL was free to negotiate such terms as it thought
> necessary for its protection.

Id. at 1550-51; see also Washington Nat. Ins. Co. v. Hendricks, 855 F. Supp. 1542, 1553-55

(W.D. Wis. 1994) (concluding in an insurer's action against employer to recover premiums owed

in connection with an ERISA plan that the insurer "has no cause of action under [ERISA §

502]"; noting that "actions under [ERISA § 502] are generally permitted to benefit the plan itself

rather than a fiduciary and generally, a fiduciary owes no duty to another fiduciary, but only to

the plan"; permitting "plaintiff [insurer] [to] maintain an action for breach of contract under the

federal common law of ERISA" (citing First Nat. Life Ins. Co., 960 F.2d at 1551)).[8]

    Here, even accepting MetLife's allegation that MetLife and Defendants both owe

a fiduciary duty to the Plan (see Cmplt. (Dkt. No. 1) ¶¶ 43-45),[9] "this does not mean that either . .

---

[8] The district court in Washington Nat. Ins. Co. went on to "note" that "parenthetically . . . none
of the defendants in this case qualify as fiduciaries [of the plan]." Washington Nat. Ins. Co., 855
F. Supp. at 1553. The district court did not rely on that finding, however, in reaching the
conclusions cited above.

[9] MetLife argues that Defendants are bound by admissions they made in a state court proceeding
in which they allegedly acknowledged that MetLife is a fiduciary of the Plan. (Pltf. Br. (Dkt.
No. 31) at 15-17) Defendants state that it is "debatable" whether MetLife is a fiduciary of the
Plan, but go on to argue that – even if this Court "presume[s] [MetLife] to be a plan fiduciary" –
"MetLife cannot sue [Defendants] for breach of fiduciary duty, as [Defendants] did not owe
MetLife a fiduciary duty." (Def. Br. (Dkt. No. 33) at 4-5) For purposes of resolving
Defendants' motion to dismiss, this Court has assumed that MetLife owes a fiduciary duty to the
Plan.

. was a fiduciary with respect to the other." Sharp Elecs. Corp., 578 F.3d at 512. Moreover, the Complaint does not plead facts demonstrating that Defendants owed a fiduciary duty to MetLife. To the contrary, the Complaint pleads facts demonstrating that MetLife and the Defendants' "relationship was purely contractual," Sharp Elecs. Corp., 578 F.3d at 512: the Trust purchased a life insurance policy from a MetLife affiliate and paid the insurer monthly premiums, in exchange for which the insurer agreed to pay Defendants the face amount of the policy upon Dominick C. Massaro's death. (Cmplt. (Dkt. No. 1) ¶¶ 16, 22, 25)  These facts provide no basis for this Court to find that Defendants owed MetLife a fiduciary duty.

Because all of MetLife's causes of action are founded on the claim that Defendants breached a fiduciary duty they owed to MetLife under ERISA, Defendants' motion to dismiss will be granted. See Jander v. Int'l Bus. Machines Corp., No. 15CV3781, 2016 WL 4688864, at *3 (S.D.N.Y. Sept. 7, 2016) (granting motion to dismiss claims brought under ERISA § 502 where "Plaintiffs . . . do not sufficiently plead that [defendant] was a . . . fiduciary"); Util. Audit Grp. v. Capital One, N.A., No. 14-CV-0097 SJF GRB, 2015 WL 1439622, at *12 (E.D.N.Y. Mar. 26, 2015) (because defendant was not acting as a fiduciary when taking the actions at issue, "plaintiffs' ERISA breach of fiduciary claims . . . are dismissed. . . for failure to state a claim for relief"); Severstal Wheeling Inc. v. WPN Corp., 809 F. Supp. 2d 245, 261 (S.D.N.Y. 2011), aff'd, No. 15-2866, 2016 WL 4543094 (2d Cir. Aug. 30, 2016) (dismissing claims for breach of fiduciary duty under ERISA where complaint failed to adequately allege defendant's status as a fiduciary).

MetLife also argues, however, that the Complaint asserts that "Defendants breached their fiduciary duty to the Plan by refusing to return [the] overpaid funds." (Pltf. Br. (Dkt. No. 31) at 8; see Cmplt. (Dkt. No. 1) ¶ 52 (alleging that "Defendants' refusal to return the

11

overpaid proceeds . . . is a clear violation of the terms of the [life insurance] [p]olicy, a Plan

asset, and thus[] of the prudent man standard [for fiduciaries] under ERISA")) MetLife contends

that it is entitled to bring such a claim because it is a Plan fiduciary. (Pltf. Br. (Dkt. No. 31) at

16)

    "Under section 502 of ERISA, . . . fiduciaries . . . may commence an action for

breach of a fiduciary duty on behalf of a pension plan." H & R Convention & Catering Corp. v.

Somerstein, No. 12-CV-1425, 2013 WL 1911335, at *7 (E.D.N.Y. May 8, 2013) (citing 29

U.S.C. § 1132(a)); Ello v. Singh, 531 F. Supp. 2d 552, 564 (S.D.N.Y. 2007) ("Section 502 names

three classes of persons who may commence an action for breach of a fiduciary duty: (1) a

participant or beneficiary, (2) the Secretary of Labor, and (3) a fiduciary"). A plaintiff bringing a

breach of fiduciary duty on behalf of an ERISA plan must show, however, that the defendant's

breach of fiduciary duty "caused a loss to the plan at issue." Pension Ben. Guar. Corp. ex rel. St.

Vincent Catholic Med. Ctrs. Ret. Plan v., 712 F.3d at 730 (citations omitted); see Haddock v.

Nationwide Fin. Servs., Inc., 570 F. Supp. 2d 355, 366 (D. Conn. 2008) ("to survive a motion to

dismiss, a plausible claim for breach of fiduciary duty must allege some type of actual harm or

loss to the Plan";"[plaintiff] cannot plead a plausible claim for breach of fiduciary claim where,

even taking the allegations . . . as true, no loss to the Plan[] . . . occurred" (citing Iqbal, 490 F.3d

at 157-58)); Proujansky v. Blau, No. 92 CIV. 8700 (CSH), 2000 WL 98382, at *9 (S.D.N.Y. Jan.

28, 2000) ("to the extent that plaintiff sues for [defendant's] breach of fiduciary duties under

ERISA . . . she must demonstrate a loss [to the Plan] under ERISA").

    Here, the Complaint does not allege that the Plan suffered any loss as a result of

Defendants' alleged breach of fiduciary duty. Instead, the Complaint alleges that MetLife

suffered a loss of $481,237.21 as a result of its overpayment to Defendants. (See Cmplt. (Dkt.

No. 1) ¶ 54 ("[t]he $481,237.21 amount overpaid to the Trust belongs to MetLife, and the Trust has improperly retained these funds causing injury to MetLife")). Accordingly, MetLife is not suing here "on behalf of [an ERISA] plan." H & R Convention & Catering Corp., 2013 WL 1911335, at *7. Instead, MetLife is suing an ERISA plan to recover money it claims the plan wrongfully retained.

This type of claim will not support a breach of fiduciary duty cause of action under ERISA § 502. See Sharp Elecs. Corp., 578 F.3d at 512 (rejecting employer's argument that, as an ERISA plan fiduciary, "it could assert a claim to relief [for breach of fiduciary duty] . . . on behalf of the Plan" where the employer was not actually "su[ing] to recover anything on behalf of the Plan; rather, it [was] suing to recover [on its own behalf].") Here, as in Sharp Elecs. Corp., the breach of fiduciary duty claim fails because plaintiff is suing solely to recover money on its own behalf, and has not "explain[ed] how the alleged breach of fiduciary duty imposed (or could have imposed) a loss on the Plan." Id. at 513.

Coyne & Delany Co. v. Selman, 98 F.3d 1457 (4th Cir. 1996), cited by MetLife (Pltf. Br. (Dkt. No. 31) at 18), is not to the contrary. In that case, the Fourth Circuit concluded that the ERISA plan at issue had suffered a loss, having erroneously paid out $160,000 more than it should have. Coyne & Delany Co., 98 F.3d at 1466 ("the Plan paid $160,000 to cover a part of a non-participant's medical bills"). There is no such loss to the Plan here.[10]

---

[10] MetLife also argues that Defendants' actions have harmed the Plan by "artificially inflating the value of the Trust and the Plan due to improper retention of funds," and by "exposing the Plan to additional costs and expenses related to MetLife and the Trust's own costs and attorney's fees" in connection with this litigation. (Pltf. Br. (Dkt. No. 31) at 18)

As to the artificial inflation point, such an allegation provides the basis for a breach of fiduciary duty claim only where there is evidence that the artificial inflation ultimately caused a loss to an ERISA plan. See, e.g., In re Pfizer Inc. Erisa Litig., No. 04CIV.10071 (LTS) (JFE), 2009 WL 749545, at *1, 3 (S.D.N.Y. Mar. 20, 2009) (denying motion to dismiss ERISA breach of fiduciary duty claims where "Defendants either knew or should have known" that the value of plan assets

Accordingly, to the extent that MetLife is attempting to assert a claim for breach of fiduciary duty on behalf of the Plan, that claim will also be dismissed on the grounds that the Complaint has not sufficiently alleged a loss to the Plan resulting from Defendants' actions. See Sharp Elecs. Corp., 578 F.3d at 512-13 (rejecting claim for breach of fiduciary duty where employer did not "explain how the alleged breach of fiduciary duty imposed (or could have imposed) a loss on the Plan," and the losses alleged were "plainly damages and expenses to [the employer] . . . not to the Plan"); Haddock, 570 F. Supp. 2d at 365 (claim for "breach of fiduciary duty . . . fails to state a claim for relief" because the claim "does not allege any losses or harm [to an ERISA plan] arising from the . . . alleged breach").

## B.     Equitable Relief under ERISA § 502(a)(3)

MetLife also seeks equitable relief pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), arguing that this provision provides a cause of "action to prevent a Plan trustee and/or fiduciary's unjust enrichment." (Pltf. Br. (Dkt. No. 31) at 22). Defendants argue that "[b]ecause MetLife's breach of fiduciary duty claims fail, and because § 502(a)(3) [does not provide] a standalone cause of cause of action under ERISA, MetLife fails to state a claim upon which relief can be granted." (Def. Br. (Dkt. No. 33) at 12)

---

were "artificially inflated" and "the Plans ultimately lost hundreds of millions of dollars"); In re Xerox Corp. Erisa Litig., 483 F. Supp. 2d 206, 211 (D. Conn. 2007) (denying motion to dismiss ERISA breach of fiduciary duty claims where fiduciaries failed to disclose that the value of a plan asset was "artificially inflat[ed]" and the plans incurred "substantial losses" as a result). Here, as discussed above, the Complaint pleads no actual loss to the Plan resulting from Defendants' actions.

MetLife's legal fees argument is likewise unpersuasive, because it would nullify the loss requirement for a breach of fiduciary duty claim. If the expenditure of legal fees sufficed to demonstrate a cognizable loss to an ERISA plan, the loss requirement would be established in every action involving a breach of fiduciary duty claim.

14

"ERISA § 502(a)(3) . . . provides for 'appropriate equitable relief' to redress ERISA violations." Demopoulos v. Anchor Tank Lines, LLC, 117 F. Supp. 3d 499, 512-13 (S.D.N.Y. 2015) (quoting 29 U.S.C. § 1132(a)(3)). "While ERISA § 502(a)(3) provides a vehicle for seeking equitable relief, in order to bring a claim pursuant to this Section, a plaintiff must also allege an underlying violation of some substantive provision of ERISA." Miller v. Int'l Paper Co., No. 12 Civ. 7071 (LAK), 2013 WL 3833038, at *4 (S.D.N.Y. July 24, 2013); see Demopoulos, 117 F. Supp. 3d at 512-13 (ERISA § 502(a)(3) "does not provide equitable relief 'at large,' but only for the purpose of redressing ERISA violations." (quoting Peacock v. Thomas, 516 U.S. 349, 353 (1996))); Gates v. United Health Grp. Inc., No. 11 CIV. 3487 KBF, 2012 WL 2953050, at *11 (S.D.N.Y. July 16, 2012) ("[the fact] that[] under Section 502(a)(3), plaintiff is entitled to pursue equitable relief against any defendant for violation of ERISA does not relieve her from having to establish an underlying violation of the statute" (citing 29 U.S.C. § 1132(a)(3); Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 239 (2000))).

Here, as noted above, all of the Complaint's causes of action are explicitly premised on Plaintiff's claim that Defendants committed a breach of fiduciary duty under ERISA § 502. (See Cmplt. (Dkt. No. 1) First, Second, and Third Causes of Action) For the reasons discussed above, Plaintiff's claims for breach of fiduciary duty fail to state a claim under Fed. R. Civ. P. 12(b)(6). Because a claim for equitable relief under Section 502(a)(3) must be based on an underlying ERISA violation, Plaintiff's claims for equitable relief under Section 502(a)(3) will be dismissed. See Gates, 2012 WL 2953050, at *11 (dismissing claim for equitable relief under § 502(a)(3) where "plaintiff cannot establish an underlying [ERISA] violation").

15

## III. LEAVE TO AMEND

District courts "ha[ve] broad discretion in determining whether to grant leave to amend." Gurary v. Winehouse, 235 F.3d 793, 801 (2d Cir. 2000). Leave to amend may properly be denied in cases of "'undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of N.Y., 514 F.3d 184, 191 (2d Cir. 2008) (quoting Forman v. Davis, 371 U.S. 178, 182 (1962)); see Murdaugh v. City of N.Y., No. 10 Civ. 7218(HB), 2011 WL 1991450, at *2 (S.D.N.Y. May 19, 2011) ("Although under Rule 15(a) of the Federal Rules of Civil Procedure leave to amend complaints should be 'freely given,' leave to amend need not be granted where the proposed amendment is futile." (citations omitted)).

MetLife requests that, if this Court grants the motion to dismiss, leave to amend be given, so that MetLife can "clarify its causes of action and allegations." (Pltf. Br. (Dkt. No. 31) at 25) Defendants argue that leave to amend should be denied, because "it is unclear how a Complaint which fails to establish subject matter jurisdiction can be altered to suddenly provide this Court with subject matter jurisdiction." (Def. Reply Br. (Dkt. No. 35) at 10)

"Where the possibility exists that [a] defect can be cured," leave to amend "should normally be granted." Wright v. Ernst & Young LLP, No. 97 CIV. 2189 (SAS), 1997 WL 563782, at *3 (S.D.N.Y. Sept. 10, 1997), aff'd, 152 F.3d 169 (2d Cir. 1998) (citing Oliver Sch., Inc. v. Foley, 930 F.2d 248, 253 (2d Cir. 1991)). Moreover, where a claim is dismissed as "inadequate[ly] pled," there is "a strong preference for allowing [a] plaintiff[] to amend." In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig., No. 07 CIV. 10453, 2011 WL

16

4072027, at *2 (S.D.N.Y. Sept. 13, 2011) (citing Ronzani v. Sanofi S.A., 899 F.2d 195, 198 (2d Cir. 1990)). Accordingly, leave to amend is granted.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is granted, and Defendants' motion to transfer this action to the Western District of New York is denied as moot (Dkt. No. 27). Defendants' motion for oral argument is denied as moot (Dkt. No. 32). The Clerk of the Court is directed to terminate the motions (Dkt. Nos. 27, 32). Any Amended Complaint will be filed by October 30, 2016.

Dated: New York, New York
September 26, 2016

SO ORDERED.

Paul G. Gardephe
United States District Judge

17